82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jermaine C. JEFFRIES, Defendant-Appellant.
 No. 95-3733.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1996.
 
 Before: KEITH, KENNEDY and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant was charged in a five-count indictment with conspiracy to possess with intent to distribute more than fifty grams of cocaine base,[1] possession with intent to distribute more than fifty grams of cocaine base,[2] murder while engaged in a conspiracy to possess with intent to distribute cocaine base,[3] possession with intent to distribute more than five hundred grams of cocaine[4] and carrying a firearm during and in relation to a drug trafficking offense.[5] The District Court granted defendant's motion for acquittal with regard to the murder count at the close of the government's case. A jury acquitted as to the gun count and convicted defendant on the remaining three counts.
 
 
 2
 Defendant raises three issues on appeal. First, he argues that the District Court erred in failing to suppress certain evidence. Second, he argues that the District Court denied defendant his Sixth Amendment right to confront a witness testifying against him by cutting short cross-examination. And finally, third, he argues that the District Court erred in enhancing his sentence two levels for obstruction of justice. For the following reasons, we find defendant's three arguments without merit and therefore, AFFIRM defendant's convictions and sentence.
 
 I.
 
 3
 On June 22, 1994, the Columbus Police Department learned of a mortal shooting. On the basis of the victim's dying words, defendant Jermaine Jeffries was a suspect. The police, in search of him, went to the home of his girlfriend, Elana Bowman.
 
 
 4
 Bowman and her mother met the police and permitted them to enter their home in which police were shown a bag which Ms. Bowman said that defendant had entrusted to her. The bag, which Ms. Bowman turned over to the police, contained nearly four kilograms of cocaine (in the form of powder and base).
 
 
 5
 Defendant was subsequently arrested along with another man, Stacy Barrett. Stacy Barrett entered into a plea agreement with the government. With Stacy Barrett's testimony and other evidence including defendant's fingerprints on the drugs and testimony of Elana Bowman, her mother Donna Bowman, and corroborating testimony of law enforcement officers, defendant was prosecuted and convicted on three counts. In return for Barrett's cooperation in defendant's prosecution, the government agreed to recommend a sentence of two to four years. Barrett testified that he believed he faced a possible twenty to thirty year sentence. JA at 223.
 
 II.
 A. The Failure to Suppress Evidence
 
 6
 Defendant moved pretrial for the suppression of the cocaine evidence as the fruits of an illegal search. The District Court held that defendant was without standing to make the claim. The government agrees with the District Court and argues that, in the event that we do not, the case should be remanded in order that the District Court inquire into the issue of consent.
 
 
 7
 A trial court's denial of a motion to suppress is affirmed on appeal if proper for any reason, including one not relied on by the trial court. United States v. Barrett, 890 F.2d 855, 860 (6th Cir.1989). We review the District Court's findings of fact for clear error and findings of law de novo. United States v. Williams, 962 F.2d 1218, 1221 (6th Cir.), cert. denied, 506 U.S. 892 (1992).
 
 
 8
 We agree with the District Court that defendant does not have standing to raise a Fourth Amendment claim in this case. See, Alderman v. United States, 394 U.S. 165, 174 (1969); Rakas v. Illinois, 439 U.S. 128 (1978). At the suppression hearing, defendant disclaimed ownership of the bag which police officers secured from the Bowman apartment. He disclaimed ownership or possession of the apartment. Furthermore, he stated that he did not, at the time of the search, have a key to the premises. He asserted no property nor possessory interest in the apartment, nor an interest in the property seized. See, Rakas, 439 US at 148. Thus, we believe that the District Court did not err, under the circumstances, in concluding that defendant did not have the requisite "legitimate expectation of privacy" to raise a Fourth Amendment claim in this case. See, Rakas, 439 U.S. at 143-44, n. 12, 149.
 
 B. Failure to Permit Cross-Examination
 
 9
 During cross-examination defendant's counsel sought to impeach the testimony of co-conspirator Barrett as tainted by bias and ulterior motive by eliciting testimony regarding his plea agreement with the government. Defendant, on appeal represents the following as having occurred:
 
 
 10
 Counsel first attempted to elicit from Barrett whether he had any discussions about any recommendations the U.S. Attorney would give regarding his sentence. The Court interrupted by stating in the presence of the jury, "I do not accept recommendations from anybody, the United States Attorney or anybody else, so you don't have to answer any questions along that line." Subsequently, while attempting to elicit from the witness Barrett testimony of his subjective belief as to what benefit his testimony would bring him, the Court again cut defense off, stating, "I do not accept recommendations from anybody, the United States Attorney or anyone else. So, you are wasting your time."
 
 
 11
 Appellant's Brief at 9-10 (citations to transcript omitted).
 
 
 12
 The District Court erred to the extent that it restricted, in barring cross-examination on the witness' understanding of his plea bargain, important impeachment evidence. The record, however, shows that between the District Court's two statements quoted, defense counsel successfully elicited from witness Barrett that he knew he was facing a possible sentence of twenty to thirty years and had received a letter from the government assuring him of a recommendation of a two to four year sentence. JA at 222. Thus, the jury was aware of the essential information regarding Barrett's bias and motive for providing testimony favorable to the government and that the witness was not disinterested in this case. He had a motive to curry favor with the prosecution; he had cut a deal.[6] Even though the jury had the information, the District Court's comments were still arguably prejudicial in that they may have mislead the jury into thinking that the prosecution's recommendation was of no value to the witness, because it was of no value to the judge. If so, then the government's recommendation would have been unlikely to give the witness motive to lie.
 
 
 13
 We agree with the Ninth Circuit that "[t]he right to cross-examine adverse witnesses, stemming from the confrontation clause,' is especially important with respect to accomplices or other witnesses who may have substantial reason to cooperate with the government." United States v. Mayans, 17 F.3d 1174, 1184 (9th Cir.1994) (discussing the importance of plea bargain as impeachment). We further agree with dicta in that opinion, however, that abridging that right may, under certain circumstances, constitute harmless error, Id., and consider whether it was harmless in this case.[7] Because the essential impeachment information was obtained, the restriction on cross-examination was slight and the court's comment was not directed at defendant or his counsel, we believe any error here was harmless
 
 
 14
 While Barrett was an important witness, nevertheless, without Barrett's testimony, there was overwhelming evidence of defendant's guilt of the possession and possession with intent to distribute cocaine. At trial, defendant's girlfriend testified that defendant gave her "a Lazarus bag" (a shopping bag, JA at 248) to keep at her house, JA at 154, a bag which she gave to the police, JA at 158, 248, and which contained cocaine powder and cocaine base weighing nearly four kilos. JA at 225. Defendant's fingerprint was on the bags which contained cocaine. JA at 170-71, 269. There was testimony that he possessed five automobiles (bought by him but some under his Ms. Bowman's name), JA at 156-57, that he paid frequently for additional cars to be rented, as well, JA at 131-32, 139, that he paid for and used a cellular phone and pager, JA at 147, and paid for all the ordinary incidents of life, JA at 145, and there was no evidence of a legal source of income for such significant expenditures.
 
 
 15
 In short, the jury had abundant evidence on which to convict defendant on the possession counts and possession with intent to distribute. Furthermore, as emphasized supra, while the District Court's comments were improper, the jury was nevertheless able to gather that witness Barrett was cooperating with the government in the hopes of a lighter sentence. Thus, we believe the error harmless as having had little or no effect on the jury. United States v. Dean, 969 F.2d 187 (6th Cir.1992), cert. denied, 507 U.S. 1033 (1993); Kotteakos v. United States, 328 U.S. 750, 765 (1946).
 
 
 16
 C. Sentence Enhancement for Obstruction of Justice
 
 
 17
 Defendant's objection to the two point increase in his base offense level for obstruction of justice is without merit.[8] He makes the argument that "[a]pplication of the two (2) level enhancement for asserting his innocence will have a chilling effect on every defendant's decision to take the stand in their own behalf." A sentence enhancement for assertion of innocence (other than a denial of guilt under oath that constitutes perjury) is inappropriate under this section of the guidelines, as is made clear by the commentary to the section, but that is not what happened here. U.S.S.G. § 3C1.1, comment (n. 1).
 
 
 18
 In this case, at the suppression hearing, defendant denied ownership of a bag containing a large quantity of illegal drugs, and the District Court was not clearly erroneous in its concluding that the defendant was lying while under oath. See United States v. Head, 927 F.2d 1361, 1372 (6th Cir.1991) (employing clear error standard). Furthermore, his denial concerned a material issue in this case because ownership of the container is closely related to ownership of its contents, which was central to the prosecution. Providing materially false information to a judge is explicitly mentioned as "conduct to which [§ 3C1.1] enhancement applies." U.S.S.G. § 3C1.1 comment. (n. 3(f).
 
 III.
 
 19
 For the stated reasons, we AFFIRM defendant's convictions and sentence.
 
 
 
 [1]
 In violation of 21 U.S.C. § 846
 
 
 [2]
 In violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii) and 18 U.S.C. § 2
 
 
 [3]
 In violation of 21 U.S.C. § 848(e)(1)(a) and 18 U.S.C. § 2
 
 
 [4]
 In violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(ii) and 18 U.S.C. § 2
 
 
 [5]
 In violation of 18 U.S.C. §§ 924(c) & 2
 
 
 [6]
 Furthermore, the record gives reason to believe that the witness had yet to be sentenced at the time of defendant's trial. See JA at 222 (witness seems under the impression that the prosecution's recommendation was contingent on his "coming through in this trial")
 
 
 [7]
 We choose the word "abridge" with some care and intend it to mean "to lessen" rather than "to deprive." (The dictionary offers both meanings.) For our purposes, it is important to stress that the comment of the District Court may well have diminished the effect of defendant's impeachment of the witness but the jury, nevertheless, was allowed to hear evidence of the plea bargain and witness' knowledge of it
 
 
 [8]
 § 3C1.1 of the Sentencing Guidelines reads as follows:
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.